UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLARENCE GREEN,

                              Plaintiff,

                                                                       DECISION AND ORDER

                                                                           04-CV-6213L

            v.

VICTOR HERBERT, et al.,

                              Defendants.
_____

      Plaintiff, Clarence Green, appearing *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), asserts various constitutional claims against thirty-nine defendants. Plaintiff's claims arise out of an alleged assault against him by several correction officers, and several other events more or less related to that alleged assault, all of which occurred during 2001, while plaintiff was confined at Attica Correctional Facility.

      All of the defendants, with the exception of defendants Kazmierczak, Lewalski, Porter and Welch (the officers alleged to have been directly involved in the assault), have moved for summary judgment dismissing the claims against them. For the reasons that follow, the motion is granted, in part; some of the claims against some of the defendants are dismissed.

# DISCUSSION

## I. Eighth Amendment Medical Claims

Plaintiff asserts claims against a number of defendants based on his allegation that he was denied proper medical care for the injuries that he sustained during the May 14, 2001 assault. Plaintiff alleges that the treatment he received following that assault was so inadequate as to violate the proscription of "cruel or unusual punishment" under the Eighth Amendment to the United States Constitution.

To establish this claim, plaintiff must prove that defendants' acts or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)). *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'") (quoting *Chance*, 143 F.3d at 702).

The Supreme Court has explained that the "deliberate indifference" component includes both an objective and a subjective prong. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective element, the court must consider whether the deprivation was brought about by the defendant in wanton disregard of

those rights. *Id.* To establish deliberate indifference, then, the plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. *See id.* at 299; *Anderson v. Burge*, 539 F.Supp.2d 684, 687 (W.D.N.Y. 2008).

The Court in *Estelle* also cautioned that mere negligence is not actionable. A prisoner's complaint that a medical professional "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06. It is clear, then, that allegations of negligence alone do not state a constitutional claim. *Id.* at 106 n.14; *Chance*, 143 F.3d at 703-04.

Applying these standards to the case at bar, I find that plaintiff has failed to demonstrate the existence of any genuine issues of material fact, and that the moving defendants are entitled to summary judgment. Plaintiff's own allegations, as well as plaintiff's medical records, show that he received treatment for his injuries. The nature or extent of that treatment may not have been entirely satisfactory to plaintiff, and he may have disagreed with the decisions and judgments of the medical professionals who rendered that care, but plaintiff has not shown that any of the defendants acted with a culpable state of mind or that they ignored any serious medical need. *See Loving v. Selsky*, No. 07-CV-6393, 2009 WL 87452, at *5 (W.D.N.Y. Jan. 12, 2009); *Evan v. Manos*, 336 F.Supp.2d 255, 263 (W.D.N.Y. 2004).[1]

---

[1] In his response to defendants' motion, plaintiff asserts that the medical records submitted
(continued...)

At most, then, plaintiff has shown only a difference of opinion between him and defendants over the treatment that he should have been given. That does not give rise to an Eighth Amendment claim. *See Chance*, 143 F.3d at 703 (an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation"); *Goodson v. Willard Drug Treatment Campus*, 615 F.Supp.2d 100, 101-02 (W.D.N.Y. 2009).

**II. Due Process Claims**

Following the May 14, 2001 incident, plaintiff was issued a misbehavior report charging him with certain violations. A Tier III hearing was held before defendant Kennedy, who found plaintiff guilty on all charges, and imposed a punishment of 425 days of confinement in the Special Housing Unit ("SHU"). Plaintiff states that Kennedy's determination was reversed on administrative review in August 2001, and that plaintiff was released from SHU after 108 days of confinement. Complaint ¶¶ 30-31. Plaintiff alleges that his due process rights were violated in a number of respects in connection with the disciplinary proceedings and hearing.

The entire basis for defendants' motion as to this claim is their assertion that plaintiff spent only two months in SHU before his penalty was overturned. *See* Def. Mem. of Law (Dkt. #98-4) at 4. Defendants apparently base that assertion on plaintiff's statements that the hearing was

---

[1](...continued)
by defendants have not been properly authenticated. Plaintiff does not appear to contend that those records are in any way erroneous, however, or that they do not accurately reflect the treatment that he received. Plaintiff has therefore failed to show the existence of any genuine issue of material fact in that regard.

concluded on June 13, 2001, and that Kennedy's findings were reversed about two months later, in August 2001.

Defendants, however, appear to have overlooked plaintiff's statement that he spent 108 days in SHU before that administrative reversal. Defendants do not contend that this assertion is incorrect; they seem simply not to have noticed it, and to have assumed that plaintiff's SHU confinement began on or about June 13, 2001, when the hearing was concluded.[2]

In addition, many of the cases relied upon by defendants predate the Second Circuit case law differentiating between relatively brief periods of SHU confinement of up to 100 days, lengthy periods of confinement exceeding 305 days, and "confine[ment] for an intermediate duration–between 101 and 305 days–[which requires] 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions" in order to determine whether the confinement rose to the level of "atypical and severe hardship" that will give rise to a constitutionally protected liberty interest. *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) (quoting *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000), and *Sandin v. Conner*, 515 U.S. 472, 484 (1995), respectively). *See also Webb v. Selsky*, No. 01-CV-149, 2008 WL 796179, at *5 (W.D.N.Y. Mar. 24, 2008) (discussing test).

Defendants' contention that "plaintiff's SHU confinement is not of sufficient duration to violate plaintiff's protected liberty interests" is therefore based on an erroneous view of the facts as alleged by plaintiff, and on a less than completely accurate recitation of the applicable law. Since

---

[2]It appears from the evidence submitted by defendants that plaintiff's misbehavior report was issued, and his SHU confinement began, on the date of the underlying incident, May 14, 2001. *See* Def. Ex. A. A period of 108 days after the date of the incident, May 14, 2001, would have ended on August 30, 2001.

defendants have not presented or explicated any detailed record in support of their motion in this regard, defendants' motion for summary judgment on plaintiff's due process claim is denied.

**III. Retaliation Claims**

Plaintiff contends that several defendants retaliated against him because plaintiff had filed grievances concerning some of the incidents at issue in this case. In order to establish such a claim, plaintiff must show (1) that he engaged in constitutionally protected speech or conduct, (2) that defendants took some adverse action against him, and (3) that there was a causal connection between plaintiff's protected activity and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Because of the "ease with which a retaliation claim may be fabricated," *Nunez v. Goord*, 172 F.Supp.2d 417, 431 (S.D.N.Y. 2001), courts "approach prisoner claims of retaliation 'with skepticism and particular care.'" *Pettus v. McGinnis*, 533 F.Supp.2d 337, 339 (W.D.N.Y. 2008) (quoting *Dawes*, 239 F.3d at 491). Indeed, "virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

In the case at bar, plaintiff has not presented evidence upon which a reasonable factfinder could conclude that he was subjected to unlawful retaliation. He has simply added a conclusory assertion of retaliation to his litany of other allegations, with virtually no specific facts to support such a claim. Since it is plaintiff's obligation, at the summary judgment stage, to "set forth specific

facts showing that there is a genuine issue for trial," his failure to meet that obligation requires dismissal of his retaliation claims.

**IV. Supervisory Liability**

Plaintiff has also asserted claims against a number of supervisory officials, alleging that they failed to remedy the constitutional violations alleged here, or that they maintained policies that allowed those violations to occur. To the extent that the Court has found that the underlying constitutional claims are subject to dismissal, these claims fail as well.

With respect to the surviving excessive-force and due process claims, plaintiff's claims against the defendant supervisory officials must also be dismissed. In support of those claims, plaintiff has alleged that similar assaults had occurred against other inmates at around the time of the May 14, 2001 assault alleged here. His theory of supervisory liability, apparently, is that no action was taken against the officers who perpetrated those alleged assaults, which implicitly conveyed a message that such assaults would be tolerated.[3]

The mere fact that other incidents, involving other inmates, may have *occurred*, however, does not mean that the supervisory defendants were on notice of them, that they tolerated staff assaults on inmates, or that they were otherwise personally involved in the violation that forms the basis of plaintiff's excessive-force claim here. Courts have held that a prisoner can establish the requisite link between a supervisory defendant and an underlying constitutional deprivation by showing "a history of widespread abuse" that put the supervisor on notice of the need to correct the

---

[3] Plaintiff has alleged virtually no facts in support of his claim of supervisory liability with respect to his due process claim.

unconstitutional practices, and that he failed to do so. *Williams v. Santana*, No. 09-10198, 2009 WL 2435053, at *3 (11th Cir. 2009) (quoting *Matthews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007), *cert. denied*, 128 S.Ct. 865 (2008)). *See also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences"); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (supervisor's deliberate indifference to known risk will ordinarily be shown by evidence "that such harm has in fact occurred on *numerous* occasions" and that "the supervisory official failed to respond appropriately in the face of an *awareness* of a pattern of such injuries") (emphases added). *See, e.g., Gutiérrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562-66 (1st Cir. 1989) (supervisors' knowledge of risk inferred from many complaints of officer's violent behavior); *Herrera v. Valentine*, 653 F.2d 1220, 1225 (8th Cir. 1981) (in addition to proving 40 separate incidents of police misconduct, plaintiffs showed that these incidents had been brought to the attention of supervisory officials).

Furthermore, some of the incidents alleged here occurred *after* the assault alleged in this case. Plaintiff cannot establish supervisory liability based on events that had not yet occurred at the time of the alleged assault on plaintiff. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 137 (3d Cir. 2001) (stating that plaintiff's allegations "cannot benefit Beers-Capitol in her claim against [the supervisory defendant] because the behavior described in the allegations occurred after her abuse, and a successful deliberate indifference claim requires showing that the defendant knew of the risk to the plaintiff before the plaintiff's injury occurred").

There is, then, no evidence here to show that the supervisory defendants were aware of ongoing unconstitutional practices that they allowed to occur. That lack of evidence is fatal to plaintiff's claim against those defendants. *See Barad v. Comstock*, 03-CV-0736, 2004 WL 1573999, at *3 (W.D.N.Y. June 4, 2004) (dismissing supervisory liability claim against DOCS Commissioner Glenn Goord because plaintiff "failed to state (1) the manner in which the supervisory staff at GCF were improperly trained, (2) how Goord allegedly knew of the past instances of misconduct, (3) assuming awareness of the past conduct, how such awareness posed an unreasonable risk to plaintiff, (4) that Goord somehow knew of plaintiff's medical condition or (5) facts which could support a showing of 'grossly negligent' conduct").

Finally, plaintiff has not identified any particular policy that led to the alleged assault. In the absence of either prior notice to the defendants of an unconstitutional practice, or some policy that they maintained that allowed such practices to occur unchecked, plaintiff's claim against the supervisory defendants must fail. *See Jones v. City of Los Angeles*, No. CV 09-03162, 2009 WL 3711662, at *10 (C.D.Cal. Oct. 30, 2009) ("To premise a supervisor's alleged liability on a policy promulgated by the supervisor, the plaintiff must identify a specific policy and establish a 'direct causal link' between that policy and the alleged constitutional deprivation") (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)); *Wells v. Wade*, 36 F.Supp.2d 154, 160 (S.D.N.Y. 1999) (granting summary judgment for prison superintendent were plaintiff had not identified "any specific act or omission or policy promulgated or enforced by [superintendent] that caused [plaintiff's] injury").

**V. Other Claims**

While the Court's discussion thus far encompasses nearly all of plaintiff's claims, I note two particular claims that do not neatly fall into any one of the categories listed above. First, plaintiff alleges that defendant Schiffer, who was assigned to investigate plaintiff's grievance, conducted a biased, unfair investigation. This claim fails because an inmate "has no constitutional right to have his grievances processed or investigated in any particular manner." *Shell v. Brzezniak*, 365 F.Supp.2d 362, 379 (W.D.N.Y. 2005); *accord Mahotep v. DeLuca*, 3 F.Supp.2d 385, 389 n.3 (W.D.N.Y. 1998).

Plaintiff also alleges that on one occasion, defendant Foley gave him a "contaminated sloppy joe dinner tray," and that plaintiff got seriously ill after eating the contaminated food. Plaintiff alleges that the styrofoam container with the food had been marked with blue ink, presumably to identify its contents as contaminated.

Plaintiff has offered no evidence, however, to establish that Foley was responsible for, or aware of, the contamination. Foley does not appear otherwise to have been involved in any of the underlying events, and I find this bare assertion to be insufficient to demonstrate the existence of any genuine factual issues concerning this claim. *See Livingston v. Goord*, 225 F.Supp.2d 321, 332 (W.D.N.Y. 2002) ("even assuming that the food was contaminated by someone, it would again be speculative to conclude that these defendants were the culprits simply because they delivered plaintiff's food to him"), *aff'd in part, rev'd on other grounds in part*, 153 Fed.Appx. 769 (2d Cir. 2005).

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #98) is granted in part. All of plaintiff's claims are dismissed, except for his excessive force claims against defendants Kazmierczak, Lewalski, Porter and Welch, and his due process claims against defendants Kennedy, Raushe, Burns, McCarthy, Perrine, Smist, and Priestly.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 5, 2010.